# United States District Court

__MIDDLE__ DISTRICT OF __ALABAMA__

UNITED STATES OF AMERICA

v.

CLARANCE EARL BIVINES

**CRIMINAL COMPLAINT**

CASE NUMBER: 2:07mj10-CSC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __January 30, 2007__ in __Montgomery__ county, in the __Middle__ District of __Alabama__ defendant(s) did, (Track Statutory Language of Offense) knowingly possess with intent to distribute 50 grams or more of a mixture or substance which contained cocaine base, a Schedule II Controlled Substance,

in violation of Title __21__ United States Code, Section __841(a)(1)__

I further state that I am a __Task Force Agent with HIDTA__ and that this complaint is based on the following facts:
                          Official Title

See attached Affidavit which is incorporated by reference herein

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

January 31, 2007                                    at    Montgomery, Alabama
Date                                                      City and State

SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer                    Signature of Judicial Officer

SCANNED

## AFFIDAVIT

Affiant, Robert Thornton, being first duly sworn, do hereby state and affirm that:

1. I am an Alabama State Trooper, assigned as an agent for the Alabama Bureau of Investigation Narcotics Operations Services, and detailed to the Major Investigation Team of the High Intensity Drug Trafficking Area Task Force (HIDTA), which are both located at the Investigative Operations Center in Montgomery, Alabama. I am cross-designated and federally deputized as an agent of the United States Drug Enforcement Administration (DEA), which empowers me with authority under Title 21, United States Code, to conduct investigations and make arrests of those suspected of involvement in illegal activity pertaining to violations of federal law. I have twenty-six years of law enforcement experience, in which, the past thirteen years have been extensively directed in narcotics investigations. The facts and information in this affidavit are based on my personal knowledge and the knowledge of other law enforcement officers.

2. On Tuesday, January 30, 2007, Alabama State Trooper Jason L. Burch was working traffic enforcement in Montgomery County, Alabama. At approximately 1:25 p.m., Trooper Burch was parked under the Mill Street overpass on Interstate 65 operating stationary radar. Trooper Burch observed a silver Jeep Cherokee traveling in the center lane. As the vehicle approached the overpass, Trooper Burch observed the vehicle out front and closest to the radar. Upon activating the radar, Trooper Burch clocked the vehicle traveling 60 miles per hour in a 50 miles per hour speed zone. The vehicle continued south on Interstate 65 past

Fairview Avenue and exited onto Edgemont Avenue. Trooper Burch pursued the vehicle and affected a traffic stop of the vehicle in the parking lot of the Liberty Market Service Station.

3. Once the vehicle was stopped, the male driver and sole occupant of the vehicle opened the driver's side door and prepared to exit the vehicle. Trooper Burch got out of the patrol car and made contact with the driver who was sitting in the driver's seat with the door open. Trooper Burch explained to the driver the reason for the traffic stop. Trooper Burch asked the driver for his driver's license and vehicle information. The driver produced a Mississippi driver's license identifying him as Clarance Earl BIVINES Jr. BIVINES also produced a rental agreement from Budget Car Rental. Trooper Burch noticed that the rental was a third party rental in the name of Markael Hyde. BIVINES advised Trooper Burch that his cousin rented the vehicle for him (BIVINES). Trooper Burch noticed that BIVINES appeared nervous and overly polite. Trooper Burch also observed BIVINES carotid artery in his neck palpitating, his hands shaking and small beads of sweat on BIVINES' forehead. Trooper Burch asked BIVINES if he had ever been arrested. BIVINES advised Trooper Burch that in the past week he was arrested in Pascagoula, Mississippi while in a stolen vehicle. Trooper Burch instructed BIVINES to sit in his vehicle (BIVINES).

4. While walking back to the patrol car, Trooper Burch observed some clothes draped in plastic and a small purple travel bag in the vehicle. Trooper Burch then began issuing BIVINES a warning citation for speeding. Trooper Burch attempted to conduct a license and warrant check through BLOC/HIDTA.

BLOC/HIDTA was unable to process the request. Trooper Burch contacted the Montgomery State Trooper Post via police radio and conducted a license criminal history inquiry. Trooper Burch learned BIVINES driver's license was current and that BIVINES had a criminal history. Trooper BURCH then called the Trooper Post and learned that BIVINES had prior arrests for narcotics violations. While sitting inside of the patrol car, an unknown Montgomery Police Department officer approached and asked if everything was alright. Trooper Burch asked the officer to stand by if he could. Trooper Burch got out of the patrol car and advised BIVINES to step out of his vehicle.

5. BIVINES exited his vehicle and met Trooper Burch behind his (BIVINES) vehicle. Trooper Burch asked BIVINES if he had ever been arrested for illegal narcotics. BIVINES stated, "No". Trooper Burch advised BIVINES that he had been arrested in 1998 for narcotics violations. Trooper BURCH asked BIVINES if there were any guns, drugs or large sums of U.S. currency in the vehicle. BIVINES stated Trooper Burch could search the vehicle. Trooper Burch then asked BIVINES if he (Trooper Burch) could search the vehicle. BIVINES stated, "Yes."

6. Trooper Burch began searching the vehicle while two (2) Montgomery Police Officers stood by with BIVINES. While conducting the search, Trooper Burch noticed that someone had placed pet shaving (cedar) under the rear cargo area. The Montgomery officers had to leave to answer a call and Trooper Burch continued the search alone. BIVINES asked if he (BIVINES) could go inside the store. Trooper Burch advised BIVINES that was fine. BIVINES returned with a drink. Prior to concluding the search, Trooper Burch observed a blue Doritos

tortilla chips bag behind the front driver and passenger seat. Trooper Burch picked up the bag and noticed that it was unusually heavy for chips. BIVINES advised Trooper Burch that Trooper Burch could have some of the chips if Trooper Burch wanted them. Trooper Burch began to move the chips around and observed a clear plastic bag containing a white powder substance believed to be cocaine. Trooper Burch then placed BIVINES under arrest.

7. While BIVINES was standing in front of Trooper Burch's patrol car, Trooper Burch removed a total of four (4) clear plastic bags containing drug evidence from the Doritos chips bag. Alabama State Trooper Corporal Jessie Peoples and Sergeant Tim Pullin arrived and BIVINES, the drug evidence, along with the vehicle, were transported to the HIDTA office.

8. The affiant met Trooper Burch at the HIDTA office and was advised of the circumstances surrounding the traffic stop. At approximately 2:29 p.m., the affiant took custody of the drug evidence from Trooper Burch. At approximately 2:40 p.m., the affiant conducted a field test on a portion of Exhibit 1 (three tied clear plastic sandwich bags all containing a white substance believed to be cocaine). The test produced a "positive" reaction for the presence of cocaine. At approximately 2:45 p.m., the affiant conducted a field test on a portion of Exhibit 2 (a tied clear plastic bag containing four (4) off white cookies shaped substance believed to be crack cocaine). This field test also produced a "positive" reaction for the presence of cocaine. Exhibits 1 and 2 were sealed inside of a DEA evidence bag by the affiant and witnessed by SA Bret Hamilton.

9. BIVINES was read and explained his rights by the affiant, at approximately 3:15 p.m., which was witnessed by TFO Randy Pollard. After being advised of his rights, BIVINES stated that he understood his rights, but he did not want to make a statement or sign anything. This was also witnessed by TFO Pollard. After being processed, BIVINES was transported to the Montgomery Police Department by the affiant and placed in the Montgomery City Jail.

_____
Robert Thornton, Affiant
Alabama Bureau of Investigation

Sworn to and subscribed before me
this 31st day of January 2007.

_____
United States Magistrate Judge