IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | CR. NO. 2:07cr28-MEF |
| | ) | (WO) |
| CLARENCE EARL BIVINS | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. Introduction**

The defendant, Clarence Earl Bivins ("Bivins"), is charged with two counts of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1). On May 11, 2007, Bivins filed a motion to suppress, in which he asserts that a law enforcement officer's continued questioning, detention, and search of his vehicle following an initial traffic stop was unreasonable. He also contends that the officer's search of the vehicle exceeded the scope of his limited consent to search a small travel bag on the floorboard of the vehicle. The court held an evidentiary hearing on the motion on June 5, 2007. Based on the evidence presented to the court and argument of the parties, the court concludes that the motion to suppress is due to be denied.

**II. Facts**

On the morning of January 30, 2007, Alabama State Trooper Jason L. Burch ("Trooper Burch") was parked under the Mill Street overpass on Interstate 65 in his patrol car operating his stationary radar. The posted speed limit was 50 miles per hour. Trooper Burch's radar clocked a silver Jeep with a Georgia tag traveling 60 miles per hour on the interstate. After the Jeep passed him, Trooper Burch began following the vehicle. The Jeep

passed the Fairview Avenue exit and continued southbound, exiting onto Edgemont Avenue. Trooper Burch followed the vehicle to the Liberty Market Service Station, where the Jeep parked next to a gas pump. Trooper Burch turned on his emergency blue lights and parked behind the Jeep.

As Bivins began to get out of the Jeep, Trooper Burch approached the driver's side door and requested Bivins' license. Bivins handed Trooper Burch his Mississippi driver's license and Trooper Burch asked Bivins where he lived. Bivins told Trooper Burch that he lived in Pascagoula, Mississippi, and that he was returning from Atlanta, Georgia, where he had visited family members. Trooper Burch then asked Bivins who owned the Jeep and Bivins responded that the vehicle was a rental car. As Bivins provided Trooper Burch the car rental agreement, the trooper advised him that he was speeding 60 miles per hour in a 50 mile per hour zone.

Trooper Burch then asked Bivins who rented the car and what kind of work he did. Bivins responded that his cousin rented the car for him and that he worked in a shipping yard. Trooper Burch advised Bivins that he was going to give him a warning ticket and asked him if he needed to pump gas. After Bivins indicated that he needed gasoline, Trooper Burch asked him to start his vehicle. When Bivins turned on the ignition, Trooper Burch noted that the vehicle had about a half tank of gas. Bivins explained that he preferred to have a full tank of gasoline when traveling. Trooper Burch also asked Bivins whether he had any prior arrests and Bivins told him that he was arrested with his brother approximately three months earlier in Pascagoula. At some point during their conversation, Trooper Burch noticed that

2

Bivins appeared to be "a little bit nervous." After this initial discussion, Trooper Burch glanced into the Jeep's rear passenger window and saw a small bag on the floorboard.

Trooper Burch returned to his patrol car and conducted a license and background inquiry. While waiting to receive the information, he prepared a warning ticket and reviewed the car rental agreement, which was not rented under Bivins' name and did not identify Bivins as the designated driver. The dispatcher notified Trooper Burch that Bivins had been arrested for a controlled substance offense in 1998. During this time, a City of Montgomery Police Officer approached and asked Trooper Burch if he needed assistance. Trooper Burch informed the officer that he planned to search the vehicle and asked him to remain nearby. While talking to the officer, Trooper Burch specified the following reasons for planning to search the Jeep: (1) Bivins told him that he did not have a criminal history, but the dispatcher indicated that he had a criminal history for drugs; (2) he pulled up to a gas tank with half a tank of gas; (3) he appeared a little bit nervous; (4) he had a bag which "looks like bundles of money from the way it's shaped"; and (5) the rental car agreement indicated that "he ain't rented on it."[1] Around this time, another City of Montgomery Police Officer arrived on the scene.

Trooper Burch exited his car and asked Bivins to get out of his vehicle. After Bivins left the Jeep, Trooper Burch gave him a citation and asked him why someone else was the designated renter on the rental agreement. Bivins explained that a family member rented the

---

[1] While this statement is grammatically incorrect, it succinctly and directly makes the point.

car for him because he does not have a Visa card.² Trooper Burch then asked Bivins whether he had any drug arrests and Bivins indicated that he did not have any other prior arrests. After Trooper Burch asked Bivins whether he was arrested in 1998, Bivins admitted that he did have a prior arrest. Next, Trooper Burch asked if there were any drugs, guns, or money in the vehicle and Bivins denied that any of these items were in the Jeep. Trooper Burch also asked who owned the travel bag and Bivins stated that the bag belonged to him. Trooper Burch then asked, "Is it okay if I search your truck?" and Bivins responded, "Go ahead."

Based on this consent Trooper Burch began conducting a search of the vehicle. In the travel bag, Trooper Burch found only T-shirts and other undergarments. In a floor storage compartment, Trooper Burch found cedar shavings in a floor storage compartment. He also found an opened bag of Doritos tortilla chips in the front passenger's seat. Beneath the chips, Trooper Burch found another bag containing a white substance which appeared to be crack cocaine.

### III. Discussion

First, Bivins asserts that Trooper Burch's continued questioning, detention, and search of his vehicle after he was issued a warning citation was unreasonable in violation of his constitutional rights. (Doc. No. 20, p. 3.) The Fourth Amendment permits the police to stop an automobile if there is probable cause to believe that a traffic violation has occurred.

---

² During the suppression hearing, Trooper Burch testified that he found Bivins' explanation unbelievable. (R. 11.) Specifically, he indicated that, during his 14 years of experience as a law enforcement officer, he has worked with rental car agencies. (*Id*.) Trooper Burch acknowledged that, when a person drives a rental car who is not listed as the driver on the rental agreement, rental car companies will routinely ask law enforcement officials to impound the vehicle. (*Id*.)

4

*Whren v. U.S.*, 517 U.S. 806, 810 (1996)). Bivens does not question whether probable cause existed to initiate the stop. However, he contends that Trooper Burch, without articulable suspicion of wrongdoing, extended his detention beyond that necessary to handle the violation.

A traffic stop must be of limited duration and may not last "any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." *U.S. v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001). The duration of the traffic stop "must be limited to the time necessary to effectuate the purpose of the stop." *Id.*  However, where the initial traffic stop is legal, the officer has "the duty to investigate suspicious circumstances that then [come] to his attention." *U.S. v. Harris*, 928 F.2d 1113, 1117 (11th Cir.1991). A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). However, a law enforcement officer is "entitled under the decisional law to conduct a variety of checks on the driver and his car, including questioning the driver about the traffic violation, requesting consent to search the car, and running a computer check for outstanding warrants." *U.S. v. Simmons*, 172 F.3d 775, 778 (11th Cir.1999). In addition, the stop "may be prolonged where an officer is able to articulate a reasonable suspicion of other illegal activity beyond the traffic offense." *U.S. v. Perkins*, 348 F.3d 965, 970 (11th Cir.2003). "[R]easonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. . . ." *Illinois v. Wardlow*, 528 U.S. 119 (2000). "When

making a determination of reasonable suspicion, [the court] must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Perkins*, 348 F.3d at 970 (internal quotation omitted).

> In . . . [*U.S. v. Pruitt*, 174 F.3d 1215, (11th Cir.1999)], we made clear that a police officer's "[l]engthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances." *Id.* [at 1220.] "First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring." *Id.*; see also . . . *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir.2003)] "Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter." *Pruitt*, 174 F.3d at 1220. For purposes of the second situation, a consensual encounter does not implicate Fourth Amendment scrutiny. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991).

*U.S. v. Ramirez*, 476 F.3d 1231, 1237 (11th Cir. 2007).

The court concludes that Trooper Burch had developed ample reasonable suspicion for questioning unrelated to the stop by the time he returned the licence and the rental agreement to Bivins. While no one of the reasons would have been sufficient, the combination of them under the circumstances of the stop provided ample reasonable, articulable suspicion for Trooper Burch to continue his investigation. Those reasons include the following:

- Bivens pulled off the Interstate at an exit without any indication that fuel or other facilities were available.

- Bivens' degree of nervousness was not consistent with that of the general motoring public with whom Trooper Burch comes in contact on

a daily basis.

- Bivens was not listed as an authorized driver on the rental agreement.

- Bivens' explanation for his not being listed on the rental agreement – that *he* did not have a credit card – was not legitimate.

- Bivens was not truthful about prior drug arrests until confronted with those facts by Trooper Burch.

- Bivens was traveling from a "source city" for drugs along a known drug corridor.

Bivens relies on *Perkins*, *supra*, to support his contention that reasonable and articulable suspicion did not exist. In *Perkins*, the court found that nervousness, a habit of repeating questions, and an out-of-state license were insufficient to give rise to reasonable suspicion. The court further concluded that the officer's hunch that the driver was lying to him about his destination was also insufficient. Here, however, Trooper Burch had much more than a mere hunch. He knew that Bivens had lied to him about his criminal history for drug offenses, and he knew that Bivens was not listed on the vehicle's rental agreement for reasons which Burch knew were not valid.[3] These indicators in addition to the other indicators fully establish the necessary articulable and reasonable suspicion necessary to support Burch's continued questioning of Bivens after the reason for the stop was concluded.

Next, Bivins contends that the search of the vehicle exceeded the scope of his limited consent. Bivins argues that Trooper Burch asked him for consent to search his bag and that

---

[3]Bivens further relies on *U.S. v. Jones*, 234 F.3d 234 (5th Cir. 2000), and *U.S. v. Dortch*, 199 F.3d 193 (5th Cir. 1999), for the proposition that reasonable suspicion is not fueled by the fact that the person driving a rental vehicle was not the lessee. The continuing vitality of *Jones* and *Dortch* has been called into serious question in the Fifth Circuit by *U.S. v. Brigham,* 382 F.3d 500 (5th Cir. 2004) (en banc). Consequently, the court does not find either *Jones* or *Dortch* persuasive.

7

he never asked for permission to search the vehicle.  In turn, the Government argues that Trooper Burch specifically asked for consent to search the vehicle and that Bivins gave him permission to do so.  During the suppression hearing, defense counsel agreed that "the tape [of the incident] will speak for itself," acknowledged the parties' need to "rely on [the court's] hearing."  (Transcript of the Suppression Hearing, p. 30.)  This court has both watched and carefully listened to the audiovisual recording of the incident.  The court finds that Trooper Burch specifically asked, "Is it okay if I search your truck?" and that Bivins responded, "Go ahead." (Gov's Ex. 1-S.)

An individual's general statement of consent is "'constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass.'" *U.S. v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991) (quoting *U.S. v. Strickland*, 902 F.2d 937, 941 (11th Cir. 1990)).  "The scope of a search is generally defined by its expressed object."  *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (holding that a defendant's general authorization to search a vehicle extended beyond the car's interior to a paper bag lying on the floorboard).  Obviously, Bivins' consent to search the truck encompassed a search of the Jeep and its contents.

Based on the foregoing, the court concludes that Trooper Burch's continued questioning of Bivens was based on a reasonable and articulable suspicion of criminal conduct and that the officer's search of the vehicle did not exceed the scope of Bivins' consent.

## IV. Conclusion

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be denied. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **June 25, 2007.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 11th day of June, 2007.

                              /s/Charles S. Coody
                          CHARLES S. COODY
                          CHIEF UNITED STATES MAGISTRATE JUDGE