IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO.: 2:07cr28-MEF |
| ) | |
| ) | |
| **CLARENCE EARL BIVINS,** ) | |
| Defendant. ) | |

### OBJECTIONS TO THE REPORT OF THE MAGISTRATE JUDGE

**COMES NOW** the Defendant, Clarence Earl Bivins (alternately referred to a "Defendant" or "Bivins"), by and through counsel of record, and makes the following objections to the Recommendation of the Magistrate Judge (Doc. No. 30; hereinafter referred to as "Recommendation"):

The Magistrate Judge found and concluded that Alabama State Trooper Jason L. Burch acted within his authority in detaining Bivins and searching his vehicle after the conclusion of a traffic stop for minor speeding (which resulted in a written warning) based on the following reasons which are delineated in the Recommendation at pages 6-7:

a. Bivins pulled off the Interstate at an exit without any indication that fuel or other facilities were available.

b. Bivins' degree of nervousness was not consistent with that of the general motoring public with whom Trooper Burch comes in contact on a daily basis.

c. Bivins was not listed as an authorized driver on the rental agreement.

d. Bivins' explanation for his not being on the rental agreement – that *he* did not have a credit card – was not legitimate.

  e. Bivins was not truthful about prior drug arrests until confronted by Trooper Burch.

  f. Bivins was traveling from a "source city" for drugs along a known drug corridor.

Bivins submits that none of these reasons, under prior decisional law of the 11th Circuit, law of surrounding circuits, and the United States Supreme Court, whether taken separately or considered within a totality of the circumstances context, permit the prolonged detention, interrogation, seizure, and search of the Defendant and his property which occurred. Additionally, Defendant submits that because, by the Trooper's own statement, the Defendant was being questioned while not free to leave, the Defendant should properly have been apprised of his right to remain silent, and that failure to so notify Defendant of his rights renders his statements, which are now used as justification for the search of his vehicle, involuntary.

At the outset it must be noted that immediately or almost immediately following Trooper Burch's stop of Defendant's vehicle for moving ten miles per hour in excess of the posted speed limit, the officer determined the following facts:

  1. The Defendant had a valid driver license. (R-29: 16).

  2. The Defendant had no outstanding warrants. (R-29: 16).

  3. The vehicle in which Defendant was traveling was not stolen. (R-29: 23).

Each of the reasons cited by the Magistrate Judge will be examined in the light provided by pertinent case law, if any exists.

**a.** **Bivins pulled off the Interstate at an exit without any indication that fuel or other facilities were available.**

The fact that an open and functioning interstate exit exists at the point where Defendant exited implies that vehicles might actually so exit with some frequency; this action cannot credibly be contemplated as one which creates reasonable suspicion of criminal activity. The fact

that Defendant immediately drove to the gasoline station located at the exit is, likewise, hardly evidence of criminal activity, but rather a normal act with which any motorist is familiar.

This justification for prolonged detention of a motorist following completion of citation for the minor traffic offense for which the motorist was ostensibly stopped is novel in that the undersigned is unable to locate statutory or decisional authority that either supports or refutes it. Indeed, Trooper Burch conceded that the Defendant's act of exiting the interstate "by itself, it means nothing." (R-29: 17). Likewise, the officer's inspection of the level of fuel in Defendant's automobile (R-29: 27) is not a factor which has been recorded in prior cases as being one relevant to search of a vehicle and seizure of a person. The circumstances of this stop are further removed from average stops in that the officer not only ascertained the amount of gasoline in the tank of Defendant's automobile ((R-29: 27), but further independently calculated the amount of fuel necessary for Defendant to maintain in his tank for his interstate journey- "…there was no sense letting him pump fuel, because he didn't need it." (R-29: 37). It is hardly the prerogative of law enforcement to inspect the amount of fuel a motorist has and decree the amount necessary for an interstate journey, and further to use this calculation as justification for prolonged detention and search of a motorist's car; such calculations simply cannot credibly give rise to reasonable suspicion of criminal activity. The certainty on behalf of the officer that Defendant would not need fuel before his arrival in Mississippi from Montgomery is curious, and arguably belies a latent belief on the part of the Trooper that Defendant was going to be searched and/or arrested for *something*; this belief is articulated by the officer himself at the hearing, as will be discussed below in Subparagraph (d).

In partial summary, the theory advanced by the Government and adopted by the Magistrate Judge, that the Defendant's act of utilizing a particular interstate exit provided the

Trooper with articulable reasonable suspicion that Defendant had committed a crime, is simply not credible nor supported by prior decisions of this or any other Circuit. "[S]ome facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous." *Reid v. Georgia,* 448 U.S. 438, 441 (1980). Merely exiting an interstate at an open, functioning exit must surely be considered as one of those facts.

**b. Bivins' degree of nervousness was not consistent with that of the general motoring public with whom Trooper Burch comes in contact on a daily basis.**

The copious case law on this subject, when applied to the facts of the instant case, is virtually unanimous in rendering this justification for the prolonged detention of the Defendant wholly invalid. The Defendant will limit his objection in this matter to primary reliance upon one recent case which is virtually identical in its facts to those of the instant case.

Initially, it must be noted that Trooper Burch himself found the Defendant no more than "a little nervous" and that the officer had "seen a lot worse." (R-29: 20). As will be shown, no apparent case law supports the proposition that the minor nervousness described by the officer, (which occurs in almost all, if not all subjects of traffic stops) creates reasonable articulable suspicion of criminal activity justifying prolonged detention, interrogation, and search.

The Supreme Court has noted that a traffic stop is an "unsettling show of authority" that may "create substantial anxiety." *U.S. v. Perkins,* 348 F.3d 965, 970 (11th Cir. 2003) (citing *Delaware v. Prouse,* 440 U.S. 648, 657 (1979)). In *Perkins*, the facts of which are almost identical to those of the instant case, the arresting officer testified that the defendant was "extremely nervous, breathed rapidly, and repeated [the officer's] questions before answering them." *Id* at 968. The court also found that there was no reason the arresting officer "should have reasonably suspected that [defendant's] nervousness was tied to anything other than the fact that

4

he was being momentarily detained by an authority figure with police power over him." *Id* at 970.

Indeed, the *Perkins* Court noted that "substantial anxiety" was a "common occurrence." *Perkins*, 348 F.3d at 971. The arresting officer in *Perkins*, like Officer Burch in the instant case, conceded that nervousness in itself is not suspicious, *Perkins*, 348 F.3d at 970-971, but nevertheless both used it, *inter alia,* as grounds for detention, search, and interrogation. *Perkins* held that the inconsistent statements by the car's passengers, when combined with their obvious physical nervousness, did *not* provide requisite reasonable suspicion to justify continuation of stop after a warning ticket was issued; the defendant's motion to suppress was upheld by the 11th Circuit Court of Appeals which held that the prolonged detention of the defendant was violative of the Fourth Amendment. *Id.* at 971, 972.

This excerpt from another 11th Circuit holding which was reached involving facts very similar to those of the instant case is instructive: "[B]eing Mexican, having few pieces of luggage, being visibly nervous or shaken during a confrontation with a state trooper, or traveling the interstate with Texas license plates (not yet a crime in Alabama) … fail to suggest that appellant … [was] engaged in any criminal activity other than speeding on the highway." *U.S. v. Tapia,* 912 F.2d 1367, 1371 (11th Cir. 1990) (quoted in *U.S. v. Perkins,* 348 F.3d 965, 971 (11th Cir. 2003)).

"In this circuit, we have required more than the innocuous characteristics of nervousness, a habit of repeating questions, and an out-of-state license for giving rise to reasonable suspicion." *Perkins*, 348 F.3d at 971. It is difficult to imagine that the degree of nervousness exhibited by the Defendant in the instant case, which was conceded as minimal by the arresting officer, could provide even a remotely reasonable suspicion of criminal activity. The defendant in *Perkins*, who

5

was clearly more agitated than the Defendant here and whose nervousness was characterized as "extreme," nevertheless did not display sufficient fear or apprehension under the holdings of this Circuit to rise to reasonable suspicion of criminal activity; to hold that the instant Defendant, who was characterized as "a little nervous," did sufficiently display such apprehension is to not only overrule the prior holding of *Perkins,* but to dilute and reduce the entire concept of nervousness as grounds for interrogation and search to one so subjective within an officer as to render it objectively meaningless. "[N]ervousness is of limited significance in determining reasonable suspicion." *U.S. v. Fernandez,* 18 F.3d 874, 879 (10th Cir.1994). Were every stopped motorist who appeared "a little nervous" to be detained, interrogated and searched, the roadsides would obviously be filled with officers and motorists.

In partial summary, the theory advanced by the Government, and adopted by the Magistrate Judge, that the Defendant's display of "a little" nervousness provided the trooper with articulable reasonable suspicion that Defendant had committed a crime, is simply not credible nor supported by prior decisions of federal courts.

    **c.  Bivins was not listed as an authorized driver on the rental agreement.**

As has been shown, at the time of Officer Burch's stopping of Defendant it was determined that the Defendant had a valid driver license (R-29: 16), the Defendant had no outstanding warrants (R-29: 16), and the vehicle in which Defendant was traveling was not stolen. (R-29: 23). The dashboard videotape shows that these determinations were made in less than twelve minutes from the time the stop was initiated; the stop itself persisted on for nearly an hour. Despite these and other clear indications of Defendant's unequivocal compliance with the law, the fact that the Defendant was not listed as an authorized driver on a rental agreement (which is neither a crime or a violation) is posited by the Government as evidence of some other

criminal activity which provided reasonable suspicion thereof, and justified the prolonged detention, interrogation, and search of the Defendant. This is, again, neither credible nor supported by the pertinent case law.

This Honorable Court finds in its Recommendation that the holdings in the cases of *U.S. v. Jones,* 234 F.3d 234 (5th Cir. 2000) and *U.S. v. Dortch,* 199 F.3d 193 (5th Cir. 2000), cited in Defendant's Motion to Suppress, are called into serious question by the holding in *U.S. v. Brigham,* 382 F.3d 500 (5th Cir. 2004) (Page 7, FN3). The Defendant respectfully dissents from this finding; as will be shown, the parts of the holdings in the former cases which are germane to the instant case have not been overruled or even pertinently modified by the holding in *Brigham.*

*Jones* and *Dortch* essentially hold, respectively, that once computer license checks are completed, absent probable cause, the basis for the stop is completed and the stop cannot be prolonged by further nonconsensual interrogation and search (*Jones, supra,* 234 F.3d at 241); and that the proposition that reasonable suspicion to suspect drug trafficking anytime that someone is driving a rental car rented in the name of another is not constitutionally sound, and also that an officer may detain and question the subjects of a traffic stop during the time a computer check is being conducted. *Dortch*, 199 F.3d at 193, 199. (It is significant that in *Jones*, one of the occupants of the car had a prior arrest for crack cocaine, a fact which that court found to *create no reasonable suspicion of present drug activity*. *Jones*, 234 F.3d at 242, FN6). These holdings are not negated, or even vitiated, by the holding in *Brigham;* in that case, which contained facts including forged identity papers and nervousness to the point of physical shaking, the Fifth Circuit merely found that, following the completion of computer checks showing no crime and no wants or warrants, conclusion of the stop is mandated absent probable cause to suspect another crime; but that this required conclusion, while unaffected in itself, need not

7

preclude questioning *prior* to the conclusion of the computer checks. *Brigham*, 382 F.3d at 510. In other words, no detention occurs so long as the computer checks remain uncompleted. Nothing in *Brigham* alters the holding that a rental car driven by someone other than the person in whose name the car is rented is *not* cause to suspect drug trafficking or any other crime.

In partial summary, the fact that a rented automobile is being driven by someone other than the person named on the rental agreement is not justification for reasonable suspicion of criminal activity or for prolonged interrogation, search, and detention of the motorist.

   d. **Bivins' explanation for his not being on the rental agreement – that *he* did not have a credit card – was not legitimate.**

It is unclear how this Honorable Court reached this conclusion, other than from Trooper Burch's testimony that the explanation did not comport with the officer's own experience regarding the issue. On its face, the explanation offered by the Defendant is not spectacularly non-credible, and indeed seems perfectly logical; the only refuting evidence offered at the hearing on Defendant's Motion to Suppress was Officer Burch's testimony which is as follows:

"When I called him out of the vehicle, I asked him why he was not listed as a driver per the rental agreement. And he explained to me that because he didn't have a Visa card, he could not be listed, that he had to have a bank card, which I know that to be untrue from my experience of dealing with rentals. And I've also rented vehicles before in the past." (R-29: 11).

Ostensibly then, because the officer's past experience in renting automobiles did not coincide precisely with the procedure employed by the agency which the renter of Defendant's vehicle contracted, justification for prolonged detention, interrogation, and search was provided in the form of reasonable, articulable suspicion of criminal activity. This proposition, like that of probable cause grounded on the use of a functional interstate exit, above, is simply not sensible

8

or credible. There was not a scintilla of evidence presented at the hearing to show that the Defendant was lying about this.

The vehicle was not stolen; the license plates were not stolen; the Defendant had proper license and registration; the only crime which had been committed was the *violation* of speeding. These are the uncontested facts. From these facts it is not reasonably possible to infer that a separate crime has occurred and that Defendant has committed it, an inference apparently reached by the officer in this case as grounds for the detention, search, and interrogation of the Defendant.

Moreover, as has been illustrated above, the fact that a rented automobile is being driven by someone other than the person named on the rental agreement is not justification for reasonable suspicion of criminal activity or for prolonged interrogation, search, and detention of the motorist. *Dortch,* supra. From this predicate, and in conjunction with all the evidence of Defendant's scrupulous adherence to the law regarding operation of a motor vehicle, it is unnecessary to delve into the fine print of a rental agreement at all.

Trooper Burch testified early in the hearing as follows: "With everything that I had already observed, the indicators, the nervousness, getting off that exit that's clearly not marked for fuel – it's a no-return access – I knew I was going to attempt to gain consent to search, or utilize my canine." (R-29: 8). This is the crux of the matter, despite the government's attempts to rehabilitate and clarify this statement later during the hearing; based on nothing but "a little" nervousness, and the egress from the interstate at an exit not marked for fuel, the officer had already determined that Defendant's automobile was going to be searched. The appended justifications provided in an *ad hoc* manner, such as disputing the terms of a rental agreement, are clearly facile and specious.

In partial summary, the fact that a rented automobile is being driven by someone other than the person named on the rental agreement is not justification for reasonable suspicion of criminal activity or for prolonged interrogation, search, and detention of the motorist (*Dortch, supra*); this being so, the fact that an officer may have himself negotiated different terms in a previous rental agreement with another rental company is academic, superfluous, and immaterial. There was not a scintilla of evidence presented at the hearing to show that the Defendant was lying regarding the rental agreement or the absence of his name thereon.

   e. **Bivins was not truthful about prior drug arrests until confronted by Trooper Burch.**

Trooper Burch testified that when he asked the Defendant if he had been arrested before, the Defendant immediately answered in the affirmative. (R-29: 9). The Defendant was referring to a recent arrest in Mississippi. (R-29: 9). At Defendant's first opportunity to lie, he told the truth. (This Honorable Court at page 3 of its Recommendation found that "Bivins told [Officer Burch] that he did not have a criminal history;" this is erroneous, as illustrated by a reading of the immediately referenced page). As will be shown, whether he lied at all during the stop is arguable, but ultimately whether he did or not, no ground for the prolonged detention, search, and interrogation that occurred resulted from this putative dissembling.

It is significant that the only evidence adduced at the hearing on Defendant's Motion to Suppress regarding Defendant's criminal history was the testimony of the officer as to what the dispatcher said to *him*. Trooper Burch testified as follows regarding his exchange with dispatcher: "And she – what she stated to me was controlled substance, and she said all of them in '98." (R-29: 9). When asked what conclusion he drew from that, the officer testified. "Yes. That there had been numerous narcotics arrests." *Id.* This conclusion is simply not supported by the dispatcher's communication, which indicated that nine years ago Defendant had had more

10

than one arrest for "controlled substances" which may or may not have been narcotics as defined in the criminal code. There is no evidence, even now, that Defendant was not merely arrested on misdemeanor marijuana possession charges which were dropped nearly a decade ago; clearly no such evidence could have existed or been reasonably derived from the brief dispatcher's ambiguous communication. The leap to "numerous narcotics arrests" is not one supported by the evidence, and again belies the *ad hoc* justification for the search that was, as has been shown, a foregone conclusion in the mind of Trooper Burch from the beginning.

When the Defendant's memory was refreshed regarding these arrests, he was again immediately forthright. Had the Defendant continued to deny the old arrests, a credible argument could be made that he was indeed lying to the officer; as it transpired, the fact that he didn't deny the old arrests indicated that it was just as likely that Defendant truly had forgotten them.

Assuming *arguendo* that the Defendant was intentionally untruthful, this is not grounds for reasonable suspicion that he was involved in drug trafficking at the time of the stop. In *U.S. v. Santiago,* 310 F.3d 336, 338-339 (5th Cir. 2002), the court "found a search unreasonable even though the defendant lied to the officer about the identity of a passenger." Quoted in *U.S. v. Jenson,* 462 F.3d 399, 405 (5th Cir. 2006). That prevarication cannot reasonably be characterized as a mistake or the result of a faulty memory; the statement by the Defendant in the instant case *can* be reasonably characterized as such.

In partial summary, the Defendant immediately told the truth about an arrest one week prior to the stop; upon being reminded of an unspecified controlled substance arrest(s) which was nearly a decade old, the Defendant was likewise immediately truthful regarding this as well. Considering that an outright lie is considered by some courts as being insufficient to create reasonable suspicion of criminal activity justifying prolonged interrogation, search, and detention

of the motorist (*Santiago, supra*), it is inarguably unreasonable to permit the Defendant's statement, which is not so obviously a lie, to stand as justification for these actions by law enforcement.

**f.   Bivins was traveling from a "source city" for drugs along a known drug corridor.**

The preposterousness of this justification for Defendant's prolonged detention, interrogation, and search is plainly explicit on its face; this was conceded, in different terms, by Trooper Burch himself who stated at the hearing that a motorist traveling on Interstate 85 "means nothing." (R-29: 33). The Defendant is aware that this Honorable Court considers this factor as significant only in a totality of the circumstances context; however, as was stated above in subparagraph (a) in relation to the Defendant's exit from the interstate, "[S]ome facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous." *Reid v. Georgia,* 448 U.S. 438, 441 (1980). This, again, is such a fact. Under no reasonable analysis, nor in conjunction with any conceivable other facts, can the fact that the Defendant was traveling on Interstate 85 be probative of anything other than that the Defendant was doing what millions of other people do every day; i.e., availing himself of the use of the country's interstate system.

The Defendant would now respectfully request that he be allowed to address a matter which, although not one raised previously, is of great importance and should, Defendant submits, be included here so as to become part of the record for appellate purposes; this is the issue of custodial interrogation.

Detailed questioning, the responses to which are used against the Defendant, should, prior contrary holdings notwithstanding, trigger *Miranda* notification of right to remain silent. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966) holds, briefly, that statements elicited from

suspects who are in custody are admissible only upon a showing by the state that the suspect is apprised of his right not to incriminate himself. In this case, Trooper Burch stated that the Defendant *was not free to leave* while he was being questioned. (R-29: 29) It would be hard to classify this detention as something less than custody. Custodial interrogation is the precise trigger of *Miranda* warnings. While the United States Supreme Court held that traffic stops, which involve detention by their very nature, do not generally invoke notice of *Miranda* protections, *Berkemer v. McCarty,* 468 U.S. 420, 435-436 (1984), in cases such as this where the questioning has nothing whatsoever to do with the offense for which the motorist was stopped, the traffic citation process has been completed, and the only reason for the continued questioning is to investigate some other suspected crime, and moreover when the suspect, who is the focus of the investigation, is not free to leave, the questioning falls squarely within the custodial interrogation circumstance for which *Miranda* warnings are explicitly tailored. The holding in *U.S. v. Ramirez*, 476 F.3d 1231 (11th Cir. 2007) (citing *U.S. v. Pruitt,* 174 F.3d 1215, 1221 (11th Cir.1999)), which found that once a traffic citation procedure is completed a stop becomes a consensual encounter, has no application to the facts of this case. There was nothing consensual in the detention here as described by Trooper Burch. In contrast to *Ramirez,* the Defendant here had no way of knowing whether the citation process was completed; as the videotape shows, at the time the Defendant's license and registration were returned, the lights on Trooper Burch's car were still flashing, and the officer immediately launched into further interrogation regarding matters wholly unrelated to the stop. Any confusion is removed regarding the prolonged detention by Trooper Burch's testimony that, at the time he began the questioning that followed the conclusion of the warning citation, Defendant was "not free to leave." (R-29: 29). It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of

action is curtailed to a "degree associated with formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983). In the instant case, where the Defendant was clearly the focus of an investigation of some crime that had no relation to speeding, *and he was not free to leave*, the mere fact that the investigation was initiated by a traffic stop (which had been completed) cannot justify dispensing with the protections afforded by *Miranda. This is especially true when it is considered that if no traffic stop had been involved the* Miranda *notifications would inarguably have been required.* Additionally, the illegal detention rendered whatever consent to search which was provided by the Defendant involuntary and void.

## CONCLUSION

It is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation. *U.S. v. Wood,* 106 F.3d 942, 948 (10th Cir.1997). This is precisely what has occurred in this case. The justifications presented by the government for reasonable, articulable suspicion are, whether considered separately, in their totality, or in any combination, invalid.

Respectfully submitted this the 22nd day of June, 2007.

s/ William R. Blanchard (BLA029)
WILLIAM R. BLANCHARD
Attorney for the Defendant
BLANCHARD LAW OFFICES
Post Office Box 746
Montgomery, Alabama 36101-0746
(334) 269-9691
bill@blanchardlaw.com

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| vs. ) | CASE NO.: 2:07cr28-MEF |
| ) | |
| ) | |
| CLARENCE EARL BIVINS, ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: AUSA Tommie Hardwick, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: n/a.

Respectfully submitted,

s/ William R. Blanchard
BLANCHARD LAW OFFICES
505 South Perry Street
Post Office Box 746
Montgomery, Alabama 36101-0746
Office: (334) 269-9691
Fax:   (334) 263-4766
(BLA029)